## DUNCAN, Adm'r. *vs.* HARGROVE et al.

1. A writ of error lies under the act of 1846, in all cases in which a nonsuit is taken on account of the adverse ruling of the court upon the pleadings in the cause.

2. The act of 1846 embraces proceedings by *scire facias* commenced since its passage, to revive a judgment rendered previously to its passage.

3. In *scire facias* to revive a judgment against several joint defendants, if one defendant pleads separately, and issue is taken on his pleas, while the plaintiff demurs to the pleas of the other defendants, and, on account of the adverse ruling of the court on the demurrers, takes a nonsuit, a writ of error under the act of 1846 on this nonsuit is properly sued out against all the defendants; in such case, the writ does not amount to a discontinuance as to the defendant upon whose pleas issue was taken.

4. The refusal of the court to strike out a plea on motion of the plaintiff, is not revisable on error.

5. One of several joint defendants in a judgment may sue out a writ of error in the name of all, and give a writ of error bond superseding the whole judg

ment; and this does not discharge the other defendants from their liability, although they were only his securities on the note which is the foundation of the judgment.

6. In *scire facias* to revive a joint judgment against two or more defendants, a plea by one of them, averring that he was the security of his co-defendant on the note which was the foundation of the judgment; that his co-defendant had taken the case to the Supreme Court by writ of error, where the judgment was affirmed; that execution issued on said affirmed judgment, which was levied on property of his co-defendant; that a forthcoming bond was thereupon executed, upon which he was not a party; and that said bond was returned forfeited—is demurrable for vagueness and uncertainty, and is also defective in substance : it should aver, that plaintiff did some act, or omitted do some act which he was bound to perform, in consequence of which the judgment on the forfeited forthcoming bond became fruitless.

7. So also, a plea averring that defendant was security for his co-defendant on the note which was the foundation of the judgment, and that an execution, which issued from the Supreme Court on said affirmed judgment, was levied on property of his co-defendant sufficient to satisfy it, which levy was unaccounted for,—is substantially defective on demurrer.

8. So also is a plea, which avers that sufficient property of his co-defendant was sold by the sheriff or coronor to pay the debt, and that the money, the proceeds of the sale, went into the hands of said sheriff or coronor whilst said execution from the Supreme Court was of force in his hands, and was unaccounted for. The legal conclusions from such allegations would be, that said levy and sale were made under other process in the hands of the officer, which had priority of plaintiff's execution.

9. A judgment of the Circuit Court, when affirmed on error in the Supreme Court, becomes merged in the latter judgment; and on *sci. fa.* to revive such judgment, the statement of the rendition of the judgment in the Circuit Court must be regarded as inducement merely, and not issuable matter : a plea, therefore, denying the rendition of the Circuit Court judgment is demurrable as a plea of *nul tiel record.*

10. A judgment sought to be revived by *sci. fa.* imports on its face absolute validity, and cannot be impeached by pleading any matter going behind it.

11. When plaintiff files several replications to pleas which are not embraced in the act of 1846, (Pamphlet Acts p. 36,) the defendant may either demur generally, or may call on the plaintiff to elect which one he will retain, and move the court to strike out the others.

12. Bankruptcy may be pleaded to a *scire facias* to revive a judgment, and when it is pleaded "in short by consent," the Appellate Court will presume that it was well pleaded.

ERROR to the Circuit Court of Russell.

Tried before the Hon. ROBERT DOUGHERTY.

This was a proceeding in the court below by *scire facias*, instituted by the plaintiff in error against the defendants in error, in order to revive a judgment heretofore rendered in

the Circuit Court of Russell county, and afterwards affirmed in the Supreme Court. The original judgment, as appears by the *sci. fa.*, was rendered in the Circuit Court of Russell, at the Fall term of that court in 1840, in which Milton Williams, administrator of Francis Williams, deceased, was plaintiff, and Wm. D. Hargrove, Marcus D. Vance, and John Godwin were defendants. A writ of error seems to have been sued out on said judgment, and at the June term of the Supreme Court, 1841, the judgment was affirmed against the original defendants, as well as against Thos. J. McGehee, Benj. H. Baker, and Mahar Marshall, securities on the writ of error bond.

The *sci. fa.* further sets forth that Milton Williams, the former administrator in whose favor the judgment had been rendered, had departed this life before collecting the same, and that the present plaintiff was the administrator *de bonis non* of the estate of Francis Williams, deceased; that no execution had issued upon the judgment, so as aforesaid rendered in the Supreme Court, within a year and a day; that the same is in full force and unpaid; and calls upon the defendants to show cause why the judgment should not be revived against the defendants and the plaintiff have execution. The plaintiff files a declaration, alleging nearly the same facts, and prays that the judgment be revived, and that he be permitted to have execution thereon.

All the defendants pleaded jointly: 1st. *Ne unques* administrator; 2. *Nul tiel record;* and on these pleas issue was joined.

The defendants, Hargrove and Vance, pleaded separately their bankruptcy, to which the plaintiff demurred; the demurrers were overruled, and the plaintiff then took issue on the pleas.

The defendant, Baker, pleaded a special plea in bar, which was, on motion of the plaintiffs, stricken out.

The defendant, Godwin, pleaded separately thirteen pleas. The plaintiff moved the court to strike out the third, fourth, tenth, eleventh, twelfth and thirteenth of them; which motion was granted as to the tenth, twelfth and thirteenth, and they were accordingly struck out, and was overruled as to the balance.

The plaintiff then demurred to the third, fourth, fifth, sixth, seventh, eighth, ninth and eleventh of said pleas, and the demurrer was sustained as to the fifth, and overruled as to the others. The plaintiff then filed more than one replication to each plea yet remaining, to which replications to each plea the defendant demurred generally, and the demurrer was sustained. The plaintiff then joined issue generally, denying the truth of each plea, and to the eleventh plea filed a special replication, to which the defendant demurred, and the demurrer was sustained. The plaintiff then asked leave of the court to file other replications to this plea, and the court refused leave. At this point the plaintiff, feeling himself aggrieved by the ruling of the court, and having excepted to all the rulings against him, took a nonsuit and a bill of exceptions, from which the foregoing facts appear, as they do also from the judgment entry.

The pleas by the said Godwin, remaining after the ruling of the court to strike out, and on the demurrers, are as follows:

3. "Discharged by writ of error bond to the Supreme Court, executed by Hargrove, principal, without Godwin, security in the original note and a party to the original judgment, being on said writ of error bond or assenting to it, and against the consent of Godwin, and at a time when the money would and could have been made out of the principal, Hargrove, and his property, if such writ of error bond had not been sued out and signed.

4. "Discharged by forthcoming bond taken and forfeited and founded on the levy of an execution on affirmed judgment from the Supreme Court on a writ of error bond in said cause, and to which Godwin was not a party, said execution levied on sufficient property of Hargrove, the principal, to satisfy it and costs, and in which said forthcoming bond Godwin, who was only security on the original note and judgment, was not a party.

6. "Discharged by levy of execution on affirmed judgment in said cause from Supreme Court on sufficient property of Hargrove, the principal, which levy is unaccounted for, and which was in no way interfered with by Godwin, who was only a surety of said Hargrove, on the note on which the original judgment of said Circuit Court was founded.

7. "Discharged by levy and sale of sufficient property of Hargrove, the principal in judgment and note, by the coroner or sheriff of Russell county, which moneys for said property went into the hands of said coroner or sheriff at the date of the sale of said property, in the year ——, and whilst said process issued under said judgment was of force in his hands, and which money was in no way interfered with by the said Godwin, and which is unaccounted for, the said Godwin being only a surety of said Hargrove.

8. " Payment.

9. " Satisfaction.

11. " There is not and never was, either at the Fall term, 1840, of the said Circuit Court of Russell county, or at any other term of said Circuit Court, any judgment rendered by said Circuit Court in favor of said Milton Williams, administrator of Francis Williams, deceased, against said Wm. D. Hargrove, Marcus D. Vance, and John Godwin, for the sum of thirteen hundred and forty-six $\frac{66}{100}$ dollars damages, together with the costs, as is supposed and averred in the declaration now here filed."

As to the third plea, the plaintiff replied: 1. General denial of the truth of the plea; 2. That Godwin was a party to the Supreme Court judgment; 3. That the plaintiff in the *fi. fa.*, Milton Williams, was dead when it was levied; 4. Execution quashed.

As to the fourth plea, the plaintiff replied: 1. That the execution issued the 9th of May, 1842, was not levied on any property of the said William D. Hargrove; 2. That the property levied on by the said execution of the same date, was not sold by the officer levying the same; 3. That the property of the said Hargrove was sold under other executions, and the proceeds applied to them; 4. That the said Godwin was a party to the said judgment; 5. That no execution issued on the affirmed judgment; 6. Issue joined generally; 7. That Milton Williams was dead at the time of sale.

As to the sixth plea, the plaintiff replied: 1. That no execution issued on the affirmed judgment; 2. That the said execution issued on the 9th of May, 1842, was not levied on any property of the said Hargrove; 3. That no property of

the said Hargrove was sold under said execution by the officer levying the same; 4. That the levy was accounted for; 5. That the property was sold under this and various other executions against Hargrove, and Milton Williams was dead at the time of the sale.

As to the seventh plea, the same replications as were filed to the sixth.

As to the eighth and ninth pleas, the plaintiff replied: 1. General denial; 2. In part only.

To the eleventh plea, the plaintiff replied: 1. Issue joined generally; 2. That such a judgment as is specified in the said plea, was rendered in the Circuit Court of Russell county, and that said judgment was affirmed in the Supreme Court; 3. That at the Fall term, 1840, of the said Circuit Court, a judgment was rendered in favor of Milton Williams, administrator of Francis Williams, deceased, for thirteen hundred and forty-three dollars and sixty-six cents, together with costs of suit, as appears by the record of said Circuit Court, which is the same judgment which was afterwards affirmed by the Supreme Court against Wm. D. Hargrove, Marcus D. Vance, and John Godwin, and the other defendants to the declaration, by the description of a judgment for thirteen hundred and forty-six $\frac{66}{100}$ dollars.

After the demurrers to the replications to the eleventh plea were sustained, the plaintiff filed a special replication to said plea as follows: "That by the record and proceedings of the Supreme Court now on file in this Circuit Court, it appears that, at the Fall term, 1840, of said Circuit Court, such a judgment was rendered as is specified in the eleventh plea, and that such a judgment was affirmed by the Supreme Court, as appears by the record and proceedings of said Supreme Court, now on file in this Circuit Court." To this replication the defendant demurred, and the demurrer was sustained.

The plaintiff here assigns for error:

1. The refusal of the court to strike out the third, fourth, and eleventh pleas.

2. The overruling the demurrer to the third, fourth, and eleventh pleas.

3. The sustaining the defendant's demurrer to all the replications, to the third, fourth, fifth, sixth, seventh, eighth, ninth, and eleventh pleas.

4. Sustaining the demurrer to plaintiff's special replication to the eleventh plea.

5. In refusing to grant leave to plaintiff to file other replications to the eleventh and to the other pleas, after his replications had been demurred to and the demurrers sustained.

6. In overruling plaintiff's demurrer to Hargrove and Vance's special pleas of bankruptcy.

The defendants in error also move to dismiss the writ of error.

GEO. D. HOOPER, for plaintiff in error:   (See Appendix.)

BELSER & RICE and POPE, contra:

1. The nonsuit having been voluntarily taken by the plaintiff in the court below, he will not be allowed to revise its action in this tribunal. A scire facias to revive a judgment is a continuation of the original action, and not a new proceeding. The plaintiff's case was instituted by his intestate, and carried into judgment before the passage of the act of 1846, and the act spoken of did not warrant the nonsuit. 7 Vermont 54; 4 Ohio 398; 13 Alabama 68; Acts of 1846, page 35.

2. The decision heretofore made in this case, only settled the right of the administrator de bonis non, to revive the judgment in his name. It did not conclude the defendants to the suit from afterwards showing that they were not liable on the merits of the case. Duncan v. Hargrove, 18 Ala. 77; Miller v. Shackleford, 16 Ala. 99.

3. Pleas filed in short by consent of parties held good; if they contain substance, form is waived, and the same rule applies to replications filed in the same way. 8 Ala. 173; 15 ib. 452; 15 ib. 753.

4. Pleas which embrace distinct and substantive facts are good, if they make out one defence, each of them, and answer the declaration. 8 Leigh 532; 18 Ala. 307.

5. The refusal of the court to strike out the third, fourth, and eleventh pleas, cannot be revised. 2 Stewart 172; 9 Ala. 556; 5 Arkansas 140; 6 Smedes & Mar. 83; 5 D. & East 152; 15 Ala. 713.

6. The demurrers to the third, fourth, sixth, seventh, eighth,

ninth, and eleventh pleas, were properly overruled by the court. Clay's Dig. 312 § 39; 4 Stew. & Porter 269; 4 Ala. 19; 6 ib. 479; 6 Porter 414; 3 Ala. 485; 5 ib. 712; 1 ib. 359; 4 ib. 543; 7 ib. 469; 6 ib. 718; 2 Brock. 379; 9 Ala. 781.

7. The many replications to each of the pleas of the defendant, Godwin, filed by the plaintiff, were incorrectly interposed. Acts of 1846, p. 36; 8 Ala. 399; 7 ib. 641; 15 ib. 717.

8. Where there are several pleas in bar, going to the whole action each of them, if one is held good in a case like the present, the court will not reverse and remand. 2 Hill (N. Y.) 86; 3 Ala. 552.

9. The special replication to the eleventh plea is bad; the defects in this declaration cannot be supplied by such averments as it contains. 17 Ala. 38; 10 ib. 118; 15 ib. 353; 7 ib. 593; 5 ib. 618.

10. The eleventh plea is clearly good, as a plea denying the jurisdiction of the Supreme Court to render its judgment of affirmance, which is the judgment sought to be revived: the Supreme Court has only appellate jurisdiction,— it may affirm or reverse a judgment of the Circuit Court; but if there be no such judgment of the Circuit Court as is supposed in the judgment of affirmance, the affirmance does not merge the judgment of the Circuit Court, but is a nullity. 3 Phil. on Ev. 799, 800.

11. The eleventh plea is also good as a plea of *nul tiel record:* for it distinctly denies the existence of any such record of the Circuit Court, as alleged by plaintiff.

12. There were no points ruled against plaintiff in error, in favor of Vance and McGehee, and therefore a nonsuit as to them cannot be revised under the statute. These defendants only plead the two first pleas of *ne unques* and *nul tiel record*, to which no demurrer was interposed, and as to which there was no ruling of the court adverse to plaintiffs; and as to them, the nonsuit was purely voluntary, and of course cannot be revised unless these defendants are affected by errors committed against the plaintiffs in error at the instance of, and on separate pleas filed by two other of the defendants, even if there were errors as to said separate pleas, which it is confidently insisted there were not.

13. A nonsuit can only be revised under, and by virtue of the statute; and the statute only provides for revision in cases where there has been some ruling in favor of some person which would compel a verdict against the party injured. In this case, the pleas of the defendants, at whose instance the rulings complained of were had, might have been good and sustained by the facts; and yet, plaintiffs might have recovered against Vance and McGehee, if they failed to sustain their two pleas of *ne unques* administrator and *nul tiel record;* and it cannot be tolerated that the plaintiffs can stop causelessly so far as they are concerned, and subject them to the costs of a reversal of the plaintiff's voluntary act. Ivy v. Gamble, 7 Por. 545; Keebles v. Ford, 5 Ala. 183.

14. If the judgment was merged in the affirmance, the plaintiff must fail, because the writ of error was sued out only by the principal, and this was done before the passage of the statute allowing writs of error to be amended. Clay's Dig. 312 § 39.

15. If the judgment was not merged, then plaintiff is trying on one *scire facias* to revive two distinct judgments against different parties. Shearer v. Boyd, 10 Ala. R. 279.

16. The case of Robbins & Painter, (5 Ala. 676,) shows that a discontinuance as to two defendants who had not pleaded separate pleas, was a discontinuance of the whole suit; and in this suit the plaintiffs having voluntarily taken a nonsuit as to Vance and McGehee, without any separate plea by them, or any ruling of the court as to their defence, which made it necessary to take a nonsuit as to them, will be under that authority a discontinuance as to all; but the authorities cited to the first point above show, that the nonsuit as to Vance and McGehee, was purely voluntary, because the other defendants had pleaded separate pleas, as to which the ruling of the court alone applied, and therefore the plaintiffs below might have taken judgment against these two defendants, if they failed to sustain the only pleas they filed. See also, McAdam v. Gibson, 5 Ala. 341.

17. If Duncan did not desire to take a judgment against Vance and McGehee alone, he should not have taken a voluntary nonsuit, but should have let the jury passed upon his case, and excepted to the instructions given to the jury, and

this, under the rules of law, he could have revised. But he can only revise a voluntary nonsuit by virtue of the statute, and this does not authorize him to revise as against those for whom there was no ruling adverse to plaintiff.

18. As the writ of error must be dismissed as to Vance and McGehee, and as the nonsuit cannot be revised as to them, the writ of error will be dismissed as to all the defendants, upon the principle that the *scire facias* is a suit, and if plaintiff has proceeded irregularly as to two defendants, and thereby lost his right as to them, he must fail as to all; the suit cannot be split up.

GIBBONS, J.—A motion is made in this case to dismiss the writ of error, on the ground that it does not fall within the provisions of the statute of 1846, providing for writs of error in cases where the party in consequence of the adverse ruling of the court is compelled to take a nonsuit. The provisions of the act are : " That in all cases where it may be necessary for a plaintiff, in any proceeding at law, to enter a nonsuit, by reason of the determination of the court before which such proceeding may be pending, upon a matter of law, it shall be lawful for such plaintiff to move the Supreme Court at the ensuing term to set aside such nonsuit; when the Supreme Court shall consider the points of law arising upon said nonsuit, and set aside or confirm the same as the law shall be found."

SEC. 2. " That if the record should not of itself disclose the point upon which such nonsuit may depend, such point or points of law shall be exhibited by bill of exceptions; and the party may have his writ of error as in other cases in which writs of error are allowed by law."

This motion we understand to be based upon two grounds : First, that the nonsuit was voluntarily and not necessarily taken ; Second, that this proceeding by *scire facias* to revive a judgment rendered prior to the passage of the act, is simply a continuation of the same suit, and therefore not affected by the act.

As to the first objection, we only deem it necessary to remark, that all nonsuits in this State are voluntary, as the court has no power in any case to order one. The statute

must be construed to mean those cases in which the plaintiff, by the adverse ruling of the court on pleadings or evidence, has become satisfied that he cannot recover, and therefore takes a nonsuit to avoid a verdict against him. We do not now decide that the statute embraces every case of a nonsuit taken by the plaintiff, but we are satisfied that it does embrace all cases where the adverse ruling of the court is upon the pleadings in the cause.

Neither do we think the second objection well taken. It is true, that a proceeding by *scire facias* is in some respects a mere continuation of the same cause, yet in others it is a new suit. The defendant cannot plead matters which relate back anterior to the judgment, and in this aspect it is a continuation of the same cause ; but he can plead matters subsequent to the rendition of the judgment sought to be revived, and in this aspect it is a new suit, and is to be governed by the rules applicable to other original suits. The language of the statute is very broad, viz : " Where it may be necessary for a plaintiff in any proceeding at law, to enter a nonsuit," &c. This, we feel constrained to hold, includes proceedings by *scire facias*, as well as other original suits, and if commenced after the passage of the act, they come within it.

It is further insisted by McGehee and Vance, two of the defendants, that inasmuch as they pleaded but two pleas, to which there was no demurrer and on which issue was joined, and as they did not join in the various pleas of Godwin, one of the other defendants, on account of the rulings of the court upon whose pleas the plaintiff took the nonsuit, this operates a discontinuance of the cause as to them, and they accordingly move to dismiss the writ of error so far as they are concerned. The other defendants, assuming that this position is well taken on the part of McGehee and Vance, base upon it a further argument for their own benefit, that, as the writ of error has necessarily to be dismissed as to McGehee and Vance, this will be a discontinuance of the cause as to them, and consequently a discontinuance of the whole suit.

The vice of this argument exists in the premises assumed We do not comprehend how a voluntary nonsuit as to all the defendants will operate a discontinuance of the suit as to one, more than as to the others. The facts assumed on which

Duncan, Adm'r. v. Hargrove et al.

the position is taken are not borne out by the record, so far as the defendant Vance is concerned. He pleaded a plea of bankruptcy, which was demurred to by the plaintiff, the demurrer overruled, and that ruling of the court is one of the errors assigned. It is true, one of the defendants, McGehee, has pleaded only two pleas, on which issues have been joined, and on which no ruling has been had adverse to the plaintiff; but it does not follow that the plaintiff cannot bring him here with the other defendants, in order to revise an adverse ruling of the court on the pleas of the other defendants. He cannot split up his cause, and try one portion of it at one time and place, and another portion at another. Givens v. Robinson & Painter, 5 Ala. 676. If the plaintiff had gone on and tried as to Vance and McGehee, and taken the nonsuit as to Godwin alone, as it is insisted he ought to have done, the objection now taken could then have been urged with much more plausibility than at present. The plaintiff is strictly correct in preserving the integrity of his suit.

The first error assigned by the plaintiff is, that the court below refused his motion to strike out the third, fourth and eleventh pleas of the defendant Godwin. The ruling of the court in refusing to strike out these pleas, is not revisable on error. This has been several times decided in this court, and must now be regarded as the settled practice. Williams v. Hinkle et al., 15 Ala. 713; Turner v. Brown, 9 Ala. 867; Stanly et al. v. Hill, 9 Port. 368; Johnson v. Wren, 3 Stew. 172. The principle as stated, however, is limited to the refusal to strike out. We would not be understood as recognizing any principle as established, that, in a case where the court had exercised its discretion against the party filing the plea, and ordered it to be struck out, such party would not be able to revise such action in this court. He undoubtedly would. The reason of the rule, as first above stated, is, that when the court below refuses to strike out a bad plea, the party making the motion can always reach the defect in the plea by demurrer, and the court ought never to strike out unless the plea is clearly frivolous or fails to respond to the action.

The second and third assignments of error necessarily draw in question the sufficiency of the third, fourth, sixth, seventh,

eighth, ninth and eleventh pleas. The eighth and ninth seem to be admitted to be good. These are payment, and satisfaction.

It is to be regretted that, in the filing of special pleas and replications, so loose a practice has grown up so extensively in this State. Oftentimes pleas which are required to be framed with the greatest exactitude and precision, in order to preserve the issues within the proper limits, are formed with a few expressions or phrases which may mean something or nothing, according to the interpretation of the pleader. This loose mode of pleading specially, although very convenient to the pleader, often leads to great embarrassment, both to the party who has to reply to them, and also to the courts who have to interpret and pass upon them. In the present case, both the pleas and replications are filed "in short by consent;" that is, if we rightly understand the consent of counsel on file, form is waived, but not substance. In the examination of the several pleas, therefore, we shall consider whether they contain severally substantive matter enough out of which to frame a good plea to the declaration.

The third plea asserts, that the defendant, Godwin, is discharged, because Hargrove, the principal on the note which was the original cause of action, after the rendition of the judgment in the Circuit Court, without the consent of him, Godwin, sued out a writ of error to the Supreme Court, and gave a writ of error bond, in which bond he, Godwin, did not join or assent to in any manner whatsoever, and at a time when the said Hargrove was worth the money, and when it could have been made out of him by execution, if such writ of error bond had not been given. This plea is clearly bad. It does not appear by the plea, that the plaintiff was in any way implicated in the acts of Hargrove, or that they were done by his connivance or procurement. Hargrove had the legal right to do what he did. One of several joint defendants can, at any time within the period prescribed by the statute, sue out a writ of error in the name of all, and give a writ of error bond superseding the whole judgment. It would be a strange doctrine to hold, that because one defendant, who was the party primarily liable to pay the debt, as amongst the debtors themselves, had in the name of all

sued out a writ of error, given bond and superseded the judgment, the other defendants were thereby discharged from all liability. We have only to say, such is not the law, and the demurrer should have been sustained.

The fourth plea asserts, that the said Godwin was discharged, because a forthcoming bond was executed and forfeited, founded on a levy made under an execution on the affirmed judgment from the Supreme Court; that said execution was levied on property of Hargrove sufficient to satisfy the debt and costs, on which forthcoming bond Godwin was not a party. This plea is also defective in substance. It is entirely too vague and indefinite. It does not state who made the bond, nor when it was returned forfeited, nor where the parties lived who executed it, nor what sheriff returned it forfeited. All these facts the plaintiff has a right to know in a plea of this kind, before he is called upon to take issue upon it, or to reply to it in any way except by demurrer. Besides, if the plea was perfect in all the above items, it would still in our opinion be bad. In Collier v. Vivian, 9 Ala. 907, where the holder of a note sued out an attachment against the maker, and caused to be levied on and seized negroes sufficient to pay the note, and afterwards discharged them from the levy, this court held, that these facts did not afford a defence to the endorser either at law or in equity. In a subsequent case, however, The State Bank v. Edwards & Walke, 20 Ala. 516, where an execution had been levied on property of the principal debtor sufficient to satisfy it, and was returned by order of the plaintiff, and the property released, it was held, that the surety was thereby discharged. The doctrine of this case we think entirely correct. It is as far, however, as the current of authorities will allow of its being extended. In the case last cited it is distinctly held, "that the mere delay or want of diligence in enforcing the execution, or an agreement to delay based upon no valid consideration, will not affect the creditors' rights." This plea, then, in order to make it a defence to the action, should allege something more. It should show that the plaintiff did some act, or omitted to do some act which he was bound to perform, in consequence of which the judgment on the forthcoming bond became fruitless. The mere allegation of the

fact that there was such a forfeited bond, we do not think sufficient of itself to put the plaintiff to his replication. All the facts of the plea may be perfectly true, and yet the plaintiff may have been diligent and zealous in pursuing all his remedies on the forfeited bond, and the judgment thereon have become fruitless without any fault of his. A forfeited forthcoming bond, at best, could only be regarded as a cumulative security in the hands of the creditor, and it may well be questioned whether he would be bound to pursue his remedies upon it, to the exclusion of those which he had against the other defendants. This demurrer should also have been sustained.

The sixth plea states, that Godwin is discharged, because an execution issued on the affirmed judgment from the Supreme Court was levied on sufficient property of Hargrove, the principal, to pay the debt, and that the levy is unaccounted for, and which was in no way interfered with by him, Godwin, who was only surety of said Hargrove. In the case of Campbell, use, &c., v. Spence, 4 Ala. 543, it is decided, that a levy and seizure of goods by the sheriff sufficient to pay the debt will be a satisfaction of the judgment, so far as it respects the defendant in execution; and further, that when a levy is made on property sufficient to pay the judgment, the levy itself will be a satisfaction of the judgment as to younger judgment creditors. Conceding the correctness of these positions, it by no means follows, that a plea which states simply that a levy was made on property sufficient to pay the judgment discharges the security, who is a co-defendant. The plea does not allege that the property was seized or went into the possession of the sheriff, or that the plaintiff was guilty of any neglect or omission of duty, or that he in any manner interfered so as to render the levy fruitless. Thus far it is subject to the same objections as the fourth plea; but the plea states, that the levy is unaccounted for. Concede that it is; does it necessarily follow that the security is discharged because the levy is unaccounted for? Whose fault is it that it is unaccounted for? The plea does not inform us. As we understand the relation of creditor and security, the latter cannot be discharged from his liability by the mere inaction of the former, unless there is involved in that inaction some

breach of duty, and then the party relying upon it must allege it so that issue can be taken upon it.   State Bank v. Edwards & Walke, *supra*.   If there was a levy merely, and no seizure of the property, it was not the plaintiff's duty to account for it.   This was rather the duty of the sheriff and of Hargrove, the principal, and his sureties.   Because the plaintiff had the right to call upon the sheriff to account for the levy, and did not do so, it by no means follows that the security is discharged.   The plea shows no injury ever to have accrued to the defendant Godwin by reason of the levy not being accounted for, nor can the court know that he would be in any better condition if it was accounted for. The plea simply asserts the legal proposition, that because there was a levy on property of Hargrove sufficient to pay the debt, therefore the security is discharged.   To this proposition, as thus broadly announced, we cannot give our assent; nor do we think the additional allegation that the levy is unaccounted for, disconnected from any act done by the plaintiff or omission of duty on his part, aids it.   The demurrer to this plea should also have been sustained.

The seventh plea is clearly bad.   It alleges, that sufficient property of Hargrove was sold by the sheriff or coroner of Russell county to pay this debt, and that the moneys went into the hands of said sheriff or coroner whilst the process issued on the affirmed judgment from the Supreme Court was of force in his hands, and that such moneys were unaccounted for.   The plea does not allege, that the property was levied on and sold under the process on this judgment, but simply that it was levied on and sold whilst the process was in his hands.   If sufficient property to pay the debt had been seized and sold under this process, and said moneys were liable to be applied to this debt, it would undoubtedly be a satisfaction of the judgment as to Hargrove and all the other defendants, although the sheriff may have squandered or wasted the money.— *Vide* Campbell v. Spence, *supra*.   But the plea does not allege these facts.   The legal conclusion from the allegations of the plea, when carefully considered, are, that although the process under this judgment was in the hands of the officer, the levy and sale were made under some other process also in his hands, and which had priority to the

funds. If the plea intended to allege, that the levy and sale were made under and by virtue of the process in the hands of the officer under this judgment, it should have so stated. The plea is objectionable also for vagueness, as are the others before considered, with this further objection, that it is alleged, that the officer levying and selling was the coroner or sheriff. The pleader should have stated with precision which it was, by what process, and when sold. This demurrer should also have been sustained.

The eleventh plea states in substance, that there is not, and never was, any such judgment in the Circuit Court of Russell county as that alleged to have been rendered in the *sci. fa.* and declaration. This plea is to be regarded in two aspects: one as a plea of *nul tiel* record, and the other as a plea denying the jurisdiction of the Supreme Court to render the judgment sought to be revived. As a plea of *nul tiel* record it is not good, because the Circuit Court judgment is not the one sought to be revived. That judgment was merged in the judgment rendered in the Supreme Court, and the object of the *sci. fa.* is to revive the latter and not the former. The statement in the *sci. fa.* and declaration of the rendition of the Circuit Court judgment must be regarded as inducement merely, and not issuable matter; the gist of the action is the Supreme Court judgment.

As a plea denying the jurisdiction of the Supreme Court, it is liable to the objection, that the record of a judgment sought to be revived by *scire facias* imports upon its face absolute validity. It cannot be impeached by pleading any matter going behind the judgment. Miller v. Shackelford, 16 Ala. 95. The party against whom the judgment was sought to be revived, in the case last cited, appeared, and pleaded to the *scire facias* that the court rendering the judgment against him had never acquired jurisdiction of his person, either by service of process upon him or by attachment of his goods and chattels, and further, that he was not a resident of the State of Alabama at the time said suit was brought, and had never employed counsel to appear for him in the cause, and had never had any notice of the suit in any manner whatever; but this court held the plea bad, as it would not require the court to go back and search the records, to ascer-

Duncan, Adm'r. v. Hargrove et al.

tain whether service had actually been effected upon him or not. This authority we regard as decisive of the present plea in the aspect in which we are considering it, Whether the same rule would hold in reference to like pleas to foreign records, we do not now decide. The authorities, however, as to them, would seem to be opposed to this view. Pucket v. Pope, 3 Ala. 552, and cases there cited. The demurrer to this plea should also have been sustained.

The record shows that the plaintiff filed several replications to all of the pleas filed by Godwin, to which the defendant demurred generally, and the demurrer was sustained. In this there was no error. As a general rule, the plaintiff can file but one replication to a plea. An exception to this rule was made by the statute of 1846, which provides, that to the pleas of set-off, infancy, or the statute of limitations, the plaintiff may reply as many matters as he thinks proper, (Acts of 1846, page 36;) but this exception to the general rule cannot be extended beyond the provision of the statute. When several replications are filed, it is at the option of the defendant to demur generally, and get rid of the whole of them in that way, or he may call upon the plaintiff to elect which one he will retain, and move the court to strike out the balance. Vance v. Wells & Co., 8 Ala. 399; Williams v. Hinkle et al., 15 Ala, 713.

The only remaining error assigned, which we deem it important to notice, is, the overruling the demurrers to the pleas of bankruptcy filed by Hargrove and Vance. These pleas seem to have been filed "in short by consent;" and inasmuch as such pleas could be well pleaded, if the facts warranted it, we feel bound to presume that these were so. There was no error therefore in overruling these demurrers.

For the errors aboved noted, the judgment of nonsuit in the court below is reversed, and the cause remanded for further proceedings.